# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**ANDRIVIA FRANCES WELLS,**

    Petitioner,

vs.                                      Case No. 4:06cv137-SPM/WCS

**M. RIVERA, et al.,**

    Respondent.

_____/

## REPORT AND RECOMMENDATION TO DENY § 2241 PETITION

In this case, Petitioner challenges the denial of eligibility for the residential drug abuse program (RDAP) by the Bureau of Prisons (BOP). Section 3621(e)(2)(B) of Title 18 provides that: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." Petitioner brings her claim pursuant to 28 U.S.C. § 2241. Bourke v. Hawk-Sawyer, 269 F.3d 1072, (D.C. Cir. 2001) (habeas rather than mandamus is the proper remedy § 3621(e)(2)(B) claim). As summarized by the Government,

> The gravamen of Ms. Wells' petition is that the DSM-IV[1] does not require documentation of substance abuse or dependency during the 12 month period immediately preceding either a diagnostic interview, arrest or incarceration.  Thus, the BOP's requirement for these various documents as a prerequisite for eligibility into the RDAP is inconsistent and contrary to 18 U.S.C. § 3621(e).  Specifically, Ms. Wells asserts the BOP should have accepted the sentencing judge's recommendation and her self-proclaimed need for the RDAP to find she was eligible for the RDAP.

Doc. 21, p. 8.  Liberally construed, Petitioner also claims that the decision was based on a practice or policy (the 12 months preceding requirement) which was not promulgated as required by the Administrative Procedures Act (APA), and that it is inconsistent with the DSM-IV and BOP Program Statement 5330.10, chapter 5.  Doc. 114 (§ 2241 memorandum), pp. 2, 8, 11, 15, 19, 22-23.

I recently ordered Petitioner to show cause why this case should not be dismissed for failure to notify the court of her new address.  Doc. 22.  Petitioner had earlier said that she was placed into a six month halfway house and as of September 8, 2006, she would be residing at 521 South Summit Avenue in Charlotte, North Carolina.  Doc. 19.  As noted in the order, Petitioner was to be placed in a halfway house starting in September of 2006 for a period of six months, and it was presumed she had since been released to the five year term of supervised release.  Doc. 22, pp. 1-2.

Petitioner responded by submitting a "Memorandum and Order [to] Proceed [with a] Writ of Habeas Corpus 28 U.S.C. [§] 2241."  Doc. 22.[2]  The document lacks a

---

[1] Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM-IV).

[2] She also called on the telephone and talked to the docketing clerk regarding the order.  Petitioner is advised that any objections or complaints regarding an order must be made in writing.

signature as well as a certificate of service on opposing counsel, and contains primarily legal axioms and citations.[3] But at page 8, Petitioner states that she completed the six month halfway house term on March 5, 2007, and began her supervised release. The address previously provided is apparently her correct and current address rather than (as assumed by the court) a temporary halfway house address which changed upon release.

At the outset, it is unclear whether any relief could be granted in habeas corpus at this time. Even if Petitioner were deemed to have been eligible to participate in the residential drug abuse program (RDAP, discussed ahead), she did not.[4] It seems speculative to assume that if eligible, she not only would have participated but also successfully completed the program, and to then assume the BOP would have exercised its discretion to award a full one year reduction in her sentence. *See* Lopez v. Davis, 521 U.S. 230, 241, 121 S.Ct. 714, 722, 148 L.Ed.2d 714 (2001) ("[w]hen an eligible prisoner successfully completes the drug treatment, the Bureau thus has the

---

[3] The memorandum was accepted for filing despite the deficiencies, and one of the service copies provided by Petitioner will be forwarded to counsel for the Government.

[4] Petitioner took and completed a drug education class, not the full RDAP program. Doc. 13, Ex. A, pp. 6-7 (noting she "already completed the Drug Education class" but was ineligible for the RDAP or transfer to an institution so she could participate in the RDAP). The RDAP (completion of which results in early release eligibility) is a nine month program requiring separate housing for participating inmates, whereas the other substance abuse program available within the BOP (completion of which does not result in early release eligibility) is non-residential and of much shorter duration. Laws v. Barron, 348 F.Supp.2d 775, 798 (E.D. Ky. 2004) (discussing these programs).

authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment.").[5]  Cf., Cook v. Wiley, 208 F.3d 1314 (11th Cir. 2000):

> Here, § 3621(e)(2)(B) provides only that the BOP "may" grant a reduction in sentence to a prisoner "convicted of a nonviolent offense."  18 U.S.C. § 3621(e)(2)(B).  Because the § 3621(e)(2)(B) sentence reduction is left to the unfettered discretion of the BOP, the statute does not create a constitutionally protected liberty interest. . . .  It follows that the BOP's refusal to consider Cook for a reduction in sentence did not violate the Due Process Clause.

208 F.3d at 1322-1323 (citations and quotations omitted).  Indeed, it could be said that *because* Petitioner can no longer participate in the residential drug treatment program, the period of supervised release should remain the full term, to encourage Petitioner's continued sobriety.  After all, the successful completion of the lengthy residential program is the Congressional *quid pro quo* for a shortened prison sentence.  The Government does not argue, however, that the claim is not cognizable under § 2241, and therefore it is not recommended that the court consider this preliminary issue.

Respondent has also not argued that the claim has been mooted by Petitioner's release to supervised release.  Mootness goes to subject matter jurisdiction, however, and therefore mootness has been considered *sua sponte*.  Petitioner asks this court to "exonerate one year off her probation," that is, to order that her term of supervised release be shortened by one year.[6]  Doc. 13, p. 7.  A " term of supervised release

---

[5] Lopez upheld a BOP regulation categorically denying early release where the offense was a felony attended by the carrying, possessing, or using a firearm, codified at 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000).  *Id.*, at 718, 121 S.Ct. at 232.

[6] Most of the cases considered ahead involved attempts to require the BOP to consider the petitioner for the drug treatment program, or to require that the BOP place the petitioner into the program.  That sort of relief is moot in this case.

commences on the day the person is released from imprisonment . . . ." 18 U.S.C § 3624(e). If Petitioner's prison sentence had been "reduced" by the Bureau of Prisons in any amount, Petitioner would have started her term of supervised release earlier and therefore would end supervision earlier. Petitioner is still subject to the restrictions of supervised release, and therefore the petition is not moot.

Petitioner was sentenced in the Western District of North Carolina to a term of 151 months imprisonment followed by five years of supervised release. Doc. 21, Ex. 1 (doc. 21-2, pp. 1-5 in ECF).[7] The term of imprisonment was reduced to 115 months on the filing of a substantial assistance motion by the Government. Doc. 14, p. 3. The court recommended to the BOP that Petitioner be designated close to home, participate in the Inmate Financial Responsibility Program, work in a prison industry, be given access to educational and vocational programs, and "[participate] in substance abuse treatment program as described in 18:3621(e)(2)." Doc. 21, Ex. 1, p. 2 (doc. 21-2, p. 2 in ECF). According to the presentence report (PSR), Petitioner said she used marijuana and alcohol heavily almost daily between 1987 and 1995, "but also reports that she stopped all substance abuse during 1995 on her own volition." Doc. 21, Ex. 4 (doc. 21-2, p. 21 in ECF).

In 2004, Petitioner was deemed ineligible by the BOP for participation in the RDAP based on this information, relying on BOP Program Statement 5330.10 and the DSM-IV, which is incorporated in the program statement. *See* doc. 13, Ex. A, pp. 2-3, 6-10 (responses to Petitioner's administrative remedies and appeals).

---

[7] The court references the exhibit number followed by the citation in ECF, the Electronic Case Filing system.

As noted earlier, section 3621(e)(2) (titled "Incentive for prisoners' successful completion of treatment program"), subsection (B), provides:

> (B) Period of custody. – The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

An "eligible prisoner" is one who is:

> (i) *determined by the Bureau of Prisons to have a substance abuse problem*; and
>
> (ii) willing to participate in a residential substance abuse treatment program.

§ 3621(e)(5)(B) (emphasis added).

The regulations set forth five necessary criteria for eligibility, the first of which is "a verifiable documented drug abuse problem." 28 C.F.R. § 550.56(a)(1). Program Statement 5330.10, 5.4.1(a)(1) sets forth this requirement verbatim, then explains that drug abuse program staff should review the central file to corroborate self-reported information, and also provides that the "inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the <u>Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edication, (DSM – IV)</u>." Doc. 21, Ex. 3 (doc. 21-2, pp. 11-12 in ECF) (supplying this portion of the program statement).

The Government has supplied the relevant language from the DSM-IV, setting forth criteria for substance dependence and substance abuse. Doc. 21, Ex. 5 (doc. 21-2, pp. 22-24 in ECF). At least three of the listed criteria must be met for a determination of substance dependence "at any time in the same 12-month period;" at least one of the listed criteria "occurring within a 12-month period" must be met for a determination of

substance abuse. *Id.* (doc. 21-2, pp. 22 and 24 in ECF). Further, "the substance-related problem must have occurred repeatedly during the same 12-month period or been persistent." *Id.* (doc. 21-2, p. 23 in ECF). The DSM-IV does not specify when the 12-month period begins and ends.

>The Government contends that,
>
>>As was explained to Ms. Wells on several occasions, based upon the DSM-IV criteria, the BOP has instituted a practice of examining the 12 month period *immediately preceding the inmate's instant offense* to determine if documentation exist[s] to support a claim of drug or alcohol use.

Doc. 21, p. 7, referencing Petitioner's Ex. A (administrative remedy responses attached to the § 2241 petition).[8]

>The administrative response dated July 8, 2004, advised Petitioner that:
>
>>A review of your records reveals you have a history of consuming alcohol and marijuana from 1987-1995, but stopped all substance abuse on you[r] own in 1995. There is no indication you have used since then. Because of this, you do not qualify for the Residential Drug Abuse Program (RDAP).

Doc. 13, Ex. A, p. 3 (doc. 13-2, p. 4 in ECF). The response also noted that the sentencing judge recommended substance abuse, and Petitioner was placed in a drug education class and encouraged to participate in voluntary treatment groups. *Id.* The DSM-IV is not referenced, nor is any rule, practice, or policy of the BOP.

The administrative response dated August 16, 2004, references Program Statement 5330.10 and the DSM-IV. *Id.*, p. 6 (doc. 13-2, p. 7 in ECF). Quoting

---

[8] The administrative responses were to Petitioner's requests for relief and appeals at various levels of the grievance process. For ease of reference, the court refers to them all as administrative responses, without specifying the level of review.

language in the PSR that Petitioner's substance abuse ceased in 1995, the response said that "[t]his documentation does not support a <u>DSM-IV</u> diagnosis for a substance abuse problem because a <u>DSM-IV</u> diagnosis is reflective upon the twelve consecutive months in the community prior to your incarceration.  Therefore, you remain unqualified for the RDAP."  *Id.*

An administrative response dated September 13, 2004, states that Petitioner was "ineligible for transfer to a facility for the [RDAP] based on your [PSR], which indicates you stopped all illegal drug use in 1995."  *Id.*, p. 7 (doc. 13-2, p. 8 in ECF).  No regulation, practice or policy is referenced.

An administrative response dated October 25, 2004, provides:

> You were subsequently evaluated for participation in the RDAP and found to be unqualified.  Specifically, according to Program Statement 5330.10, <u>Drug Abuse Programs Manual, Inmate</u>, in addition to self-report information provided during the eligibility interview, there must be documentation in the [PSR] supporting a diagnosis of substance abuse or dependence, as indicated in the [DSM-IV].  According to DSM-IV criteria, there must be evidence of a substance abuse disorder in the 12 months preceding incarceration.  In your PSR, you reported you ceased all substance abuse in 1995.  This was approximately three years before your period of incarceration commenced in 1998.

*Id.*, p. 8 (doc. 13-2, p. 9 in ECF).

An administrative response dated November 9, 2004, relying upon Program Statement 5330.10, said that "in addition to self-report information provided in the Eligibility Interview, there must be documentation in your PSI or other similar records" of substance abuse or dependence as defined in the DSM-IV.  *Id.*, p. 9 (doc. 13-2, p. 10).

> According to DSM-IV criteria, there must be evidence of a substance abuse disorder in the 12 months prior to your incarceration.  In your PSI, you admitted to the past use of marijuana, as well as the past 'heavy' use

> of alcohol. However, you stated that you stopped all substance abuse in 1995, which is well outside the 12 month time period specified in policy.

*Id.*

An administrative response dated February 3, 2005, again cites Program Statement 5330.10, which "stipulates an inmate must have a verifiable, documented drug or alcohol abuse problem to be eligible for participation in the RDAP," and states that 18 U.S.C. § 3621(e) authorizes the BOP to define a substance abuse problem. *Id.*, p. 10 (doc. 13-2, p. 11 in ECF). "As indicated by the Warden and Regional Director, a careful review of your case reveals the statements in your [PSR] do not support that you had a substance use-related disorder in the twelve months prior to your incarceration. We find the decision that you are ineligible for RDAP participation to be appropriate and within policy." *Id.*

The record does not contain any written policy of the BOP establishing a requirement of a drug abuse disorder manifest in the twelve months preceding the date of the defendant's incarceration. The Program Statement references the DSM-IV and the DSM-IV does rely upon some sort of 12-month period for making a determination, but the criteria therein do not suggest or require that the 12-month period begin with the date of arrest, or with any other particular date, for that matter.

The Southern District of Georgia recently noted that while this requirement (using the date of arrest to begin the 12-month period) is a "practice" of the BOP, "it remains clear that the 'twelve months preceding' requirement is not found in the applicable statute, the regulation interpreting the statute, or in the program statement interpreting the regulation." <u>Smith v. Vazquez</u>, 491 F.Supp.2d 1165, 1167 (S.D. Ga. 2007). The

court found this "practice" was an impermissible interpretation of the statute because the BOP was "unable to identify with any specificity or consistency the actual source of the requirement," it was contrary to language in Program Statement 5330.10 that "any written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, *shall* be accepted as verification of a drug abuse problem," and the court lacked confidence that this practice was uniformly applied by the BOP.  491 F.Supp.2d at 1167-68 (quoting Program Statement 5330.10 with emphasis added).[9]  The court found "that the use of such unannounced, unwritten, and seemingly inconsistent criteria for RDAP eligibility is an unreasonable exercise of the BOP's discretion."  *Id.*, at 1168.

The court was not persuaded by cases to the contrary, relying largely on Lopez v. Davis, which the court found distinguishable.  *Id.*, at 1169.  In Lopez, "the Court evaluated an inmate's challenge to a BOP *regulation*, a rule published and codified in the Code of Federal Regulations after notice and comment," and under Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), an agency must only interpret a statute reasonably, in a manner not arbitrary or capricious.  *Id.*, at 1169-70 (citations and footnote omitted, emphasis in original).  The court said:

> The "practice" at issue in this case is not a regulation.  It is clear that "some deference" is appropriate where the agency's interpretation appears not in a published regulation but in a Program Statement, . . . but

---

[9] In the course of the proceedings in that case, in contrast to this case, the twelve months preceding requirement had been described as commencing with the date of arrest, the commission of the offense, and the period of incarceration. *Id.*, at 1168. This prompted the finding that the policy was not uniformly applied.

Case No. 4:06cv137-SPM/WCS

> this also is not a program statement. It is a "practice," apparently emanating from a BOP official's memorandum. The Eleventh Circuit has held that *Chevron* deference is to be accorded to legislative rules and agency adjudications, *not* to agency interpretations such as the one at issue in this case.

*Id.*, at 1170 (citations and footnote omitted). The court collected cases concurring with the approach of applying lesser deference to interpretive rulings and opinions, such as Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000), *Id.*, (other citations omitted). As set forth in Christensen, interpretations in formats such as opinion letters are "entitled to respect . . . but only to the extent that those interpretations have the 'power to persuade.' " 529 U.S. at 587, 120 S.Ct. at 1663, *quoting* Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (other citations omitted). *See also* United States . v. Mead Corp, 533 U.S. 218, 234, 121 S.Ct. 2164, 2175, 150 L.Ed.2d 292 (2001) ("*Chevron* did nothing to eliminate *Skidmore* 's holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency," citations omitted). The court in Smith v. Vazquez granted relief, and the BOP was directed to reconsider RDAP eligibility relying only on permissible criteria identified in the opinion. 491 F.Supp.2d at 1171.

Similarly, in Kuna v. Daniels, 234 F.Supp.2d 1168 (D. Or. 2002), the court found that "[t]he BOP is without discretion to go beyond the unambiguous terms of its program statement," and "acted arbitrarily in denying petitioner eligibility and imposing additional eligibility requirements not contained in its program statements." 234 F.Supp.2d at

1169. That case involved RDAP eligibility and Program Statement 5330.10, but did not involve the preceding twelve months requirement.[10]

In Mitchell v. Andrews, 235 F.Supp.2d 1085 (E.D. Cal. 2001), the court noted the broad discretion of the BOP over all aspects of the RDAP, and that even program statements are entitled to some deference. 235 F.Supp.2d at 1088-1090. The court reviewed 18 U.S.C. § 3621, Program Statement 5330.10, and the DSM-IV. Id., at 1090. The court said:

> The DSM-IV does not require documentation of substance abuse or dependency during the 12-month period *immediately preceding either a diagnostic interview, arrest, or incarceration.* The "practice" of the BOP in requiring such documentation as a pre-requisite for eligibility to enter the RDAP would, therefore, appear to be contrary to P.S. 5330.1 and an impermissible requirement under the statute, or, at the very least, an unreasonable exercise of the BOP's discretion as applied to petitioner, for the following reasons.

Id., at 1090-91 (emphasis in original). One of the reasons was the language in the Program Statement 5330.10 (also quoted in Vazquez, *supra*), that "any written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, *shall* be accepted as verification of a drug abuse problem." Id., at 1091 (quoting

---

[10] Because there the BOP argued that verification of abuse or dependence was required, the court quoted the same language from Program Statement 5330.10 (quoted in Vazquez) but with different emphasis: "any written documentation in the inmate's central file which indicates that the inmate *used* the *same substance*, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem." 244 F.Supp.2d at 1169. The court noted that use, as opposed to the self-reporting of abuse, was sufficient as "many individuals with dependencies minimize the extent of their substance abuse. By its own terms, the program statement requires only written documentation that the inmate used the substance for which he or she now seeks treatment." Id., record citation omitted.

Program Statement 5330.10 with added emphasis).  Other reasons were based on the record before the court in that particular case.  *Id.*, at 1091-92.

A more persuasive case is Dellarcirprete v. Gutierrez, 479 F.Supp.2d 600 (N.D. W.Va. 2007).  "Though the BOP is given significant statutory discretion in operating the RDAP program," the court said, "its program statement setting forth its interpretation of a governing statute 'lack[s] the force of law' and is not entitled to deference" under Chevron.  479 F.Supp.2d at  604 (citations and footnote – collecting cases discussing the BOP's broad discretion – omitted).

> The program statements are "entitled to respect," however, but only to the extent that they have the "power to persuade."  The persuasive power of the BOP's program statement "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

*Id.*, at 604-605 (quoting Skidmore, other citation omitted).  The court found the BOP guidelines for RDAP eligibility both persuasive and reasonable.  *Id.*, at 605.  Noting that "droves of prisoners" had applied for the RDAP, which was attractive to inmates due to the prospect of early release, "it is reasonable for the BOP to adopt screening processes to make sure that the applicants are legitimately qualified for the program."  *Id.*  The court found reliance on the DSM-IV for criteria for eligibility was also reasonable; "[s]pecifically, the BOP's requirement for documentation of drug abuse in the twelve months prior to the prisoner's incarceration is reasonably tied to the DSM-IV's diagnostic guidelines that refer to substance abuse within the preceding twelve months."  *Id.*, at 605-606.

The court acknowledged that the Mitchell opinion said "[t]he DSM-IV does not require documentation of substance abuse or dependency during the 12-month period immediately preceding either a diagnostic interview, arrest, or incarceration," but said beyond that the Mitchell opinion "does not explain why such a documentation requirement, tailored to the needs of an institution seeking to verify prisoner claims, would be present in a purely diagnostic manual."  *Id.*, at 606.

> Indeed, the twelve-month symptom-free period mentioned in the DSM-IV is highly relevant to determination of RDAP eligibility since, if verified, it may suggest that the prisoner is in remission and does not need further treatment.  Therefore, in light of the persuasive reasoning underlying the BOP's RDAP eligibility requirements, the Court concludes that the BOP requirements for RDAP eligibility are reasonable.

*Id.*, (citations and footnote 4 – noting this conclusion had been reached by several other courts, and collecting cases[11] – omitted).

In Laws v. Barron, 348 F.Supp.2d 795 (E.D. Ky. 2004), the petitioner claimed he was denied entry into the RDAP because the undisclosed policy of the BOP required verification of *abuse* of alcohol (as opposed to only *use* of other drugs), and improperly focused on the twelve months preceding arrest or incarceration.  *Id.*, at 798.  He argued that this imposition of requirements beyond the program statement was arbitrary and an abuse of discretion, citing Mitchell and Kuna.  *Id.*  The court noted that some deference is due even if the agency's interpretation of a statute appears in a program statement

---

[11] One of the cases cited is from this district.  Quintana v. Bauknect, No. 3:05cv359-LAC/EMT, 2006 WL 1174353 (N.D. Fla. May 2, 2006) (Judge Collier, adopting the report and recommendation of Magistrate Judge Timothy).  The case did not concern the "twelve month preceding" policy, but otherwise found that the requirement of the Program Statement, that there be "written documentation," is a reasonable interpretation of 18 U.S.C. § 3621(e)(1).

rather than a regulation subject to the APA.  *Id.*, at 802 (citations omitted).  The court distinguished Mitchell on the facts.  *Id.*, at 805.  As to the twelve month preceding requirement, the court thought this consistent with the DSM-IV as well as common sense, which "would dictate that entry into the most rigorous program would be restricted to those prisoners having a recent history of abuse, rather than one who can demonstrate that he had a substance abuse problem 4 to 9 years prior to arrest and 7 to 12 years prior to incarceration."  *Id.*, at 805-806.  The court acknowledged that these requirements (including the twelve months preceding incarceration requirement) did not appear in the regulations or the BOP program statement, but that did not change the "conclusion that imposing them is a reasonable exercise of the BOP's statutory discretion to determine who among the prison population has 'a substance abuse problem' and to choose 'appropriate' treatment for each prisoner who claims to need treatment."  *Id.*, at 806, citing 3621(b) and 28 C.F.R. § 550.26.  The court also found no liberty interest in RDAP participation which would trigger notice requirements of due process.  *Id.*

To like effect is Montilla v. Nash, No. CIV A 05-247 (FLW), 2006 WL 1806414 (D. N.J. June 28, 2006).  The court there found, *inter alia*, that "it is reasonable for the BOP to evaluate the existence of those symptoms [of drug abuse] during the twelve-month period immediately preceding a prisoner's entrance into the controlled environment of incarceration."  *Id.*, at *3.

Petitioner in the case at hand reported abuse of alcohol and marijuana from 1987 to 1995, but also said that she stopped using those substances in 1995, some three years before her incarceration in 1998.  There is no other evidence of use, abuse, or

dependency upon drugs.  The BOP was required to determine Petitioner's eligibility for participation in the BOP drug program in 2004, nine years after she ceased to use illegal substances.  While abuse of drugs for a period of years is a signal that Petitioner may well have a long term substance abuse problem, and Petitioner argues that this is so due to her family's history with substance abuse, this court's role is simply to determine whether the Respondent's interpretation of 18 U.S.C. § 3621(e) was reasonable.  The DSM-IV reasonably looks to a twelve-month period as evidence of a significant substance abuse problem.  While the BOP might have determined that any twelve-month period, however remote, would show that a prisoner is eligible for the program due to a "substance abuse problem" as those words are used in § 3621(e), it was also reasonable for the BOP to look only to the twelve-month period preceding the date of incarceration.  Thus, it cannot be said that the determination in this case that Petitioner lacked a verifiable or alcohol problem for purposes of participating in the RDAP was arbitrary, capricious, or an abuse of discretion.  The § 2241 petition should therefore be denied.

It is therefore respectfully **RECOMMENDED** that the § 2241 petition, challenging denial of eligibility for the residential drug abuse program (RDAP), be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 26, 2007.

> s/ William C. Sherrill, Jr.
> **WILLIAM C. SHERRILL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**